IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VANESSA DOBRICK-PEIRCE** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **2:05cv1451** |
| | ) | **Electronic Filing** |
| **OPEN OPTIONS, INC., SECURENET, INC.,** | ) | |
| **TDM NETFX, INC., GREG THORNBURY,** | ) | |
| and **STEVE FISHER,** | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION

Cercone, D.J.

## I. INTRODUCTION

Vanessa Dobrick-Peirce ("Plaintiff") filed this action on October 17, 2005, against Open

Options, Inc ("Open Options"), SecureNet, Inc. ("SecureNet"), TDM NetFx, Inc. (NetFx)

(collectively the "Corporate Defendants"), and Greg Thornbury ("Thornbury") and Steven

Fisher ("Fisher") (collectively the "Individual Defendants") seeking redress for sexual

discrimination and retaliation resulting in wrongful termination as well as defamation and

tortious interference allegedly occurring thereafter.  Presently before the court are defendants'

motions to dismiss or alternatively transfer the action to the United States District Court for the

Northern District of Texas.  For the reasons set forth below, the action will be transferred.

Plaintiff was employed by SecureNet as an account executive at its office in Carrollton,

Texas, from January 3, 2000 until June 1, 2002.  She then moved to Pittsburgh, Pennsylvania,

where she was employed by Open Options as the Northeast Regional Sales Manager.  Plaintiff was the only employee of any of the Corporate Defendants in Pennsylvania.

Plaintiff claims that she was unlawfully terminated on November 29, 2004, due to sex discrimination and in retaliation for complaints about being sexually harassed during her employment with both SecureNet and Open Options.  While the Corporate Defendants are separate entities, there is a degree of interrelatedness between them and plaintiff filed suit against all three.

The Corporate Defendants are Texas corporations with their principal places of business at a single location in Carrollton, Texas.  They were all incorporated by Steven and Patricia McWethy.  The McWethys are the sole shareholders of NetFx.  They also own stock in the other Corporate Defendants as well.

Open Options is a distributor of security access control products to customers interested in an "open architecture system."  SecureNet integrates and installs security access control systems.  Complaint at ¶ 2.

The Individual Defendants were employees of the Corporate Defendants and were Plaintiff's supervisors.  They reside in Texas.  Fisher is the CEO and President of Open Options and is also an officer and director of SecureNet.  Thornbury is a SecureNet manager.

Plaintiff's Complaint advances claims against the Corporate Defendants under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq. ("Title VII"), and state law claims for defamation and tortious interference with prospective contractual relations  against SecureNet, Open Options, and the Individual Defendants.   Thornbury and Fisher each have filed a motion to dismiss under Rule 12(b)(2) and (3) for lack of personal jurisdiction and improper

2

venue, or alternatively to transfer the action.  SecureNet and NetFx have filed a motion to dismiss under Rule 12(b)(2), (3), and (6) for lack of personal jurisdiction, improper venue and failure to state a claim, or alternatively to transfer the action.  Open Options has filed a motion to dismiss under Rule 12(b)(3) for improper venue over the state law claims and alternatively to transfer.

Plaintiff maintains that jurisdiction and venue are proper over Open Options because it conducted business in this District through its employment of Plaintiff.  In addition, there assertedly is a sufficient degree of interrelatedness among the Corporate Defendants to warrant treating them as a single employer under Title VII.  And proper jurisdiction and venue over Open Options purportedly extends to the Individual Defendants because their wrongful conduct was all interrelated to plaintiff's Title VII claims.

## II. DISCUSSION

A.  12(b)(6)

Defendants NetFx and SecureNet each seek dismissal of Plaintiff's Title VII claim for failure to state a claim upon which relief can be granted.  NetFx argues that since it has never had at least fifteen employees and never employed plaintiff, it is not an "employer" under Title VII.[1]  SecureNet argues that any claim against it is time barred.[2]

---

[1] Title VII regulates the employment practices of employers and defines an employer to be "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year,..." 42 U.S.C. § 2000e(f).

[2] In order to preserve her statutory rights under Title VII, Plaintiff had to file an administrative charge against SecureNet with the EEOC or appropriate state agency within 180 days or 300 days of the alleged unlawful employment practice.  Plaintiff worked for SecureNet from 2000 to 2002 and filed her charge with the EEOC in 2005, more than 3 years after her employment at SecureNet ended.  SecureNet therefore argues that any claim she could have against it must be time barred since she had not been its employee for more than the 300 day limitation period, and therefore no "act of discrimination" could have taken place within the statutory time period.

3

In response, Plaintiff argues that the Corporate Defendants are a single employer for Title VII purposes. Therfore, her employment with Open Options extends that relationship to Netfx and SecureNet and makes her claims against those entities proper and timely.

In deciding a Rule 12(b)(6) motion, the court must accept all factual allegations and the reasonable inferences therefrom as true. *Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988)*. A claim should not be dismissed for failure to state a claim unless it appears beyond doubt that the non-moving party can prove no set of facts in support of its allegations which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Marshall-Silver Contruction Co. v. Mendel*, 894 F.2d 593, 595 (3d Cir. 1990). In making this determination the court must construe the pleading in the light most favorable to the non-moving party. *Budinsky v. Pennsylvania Dept. of Environmental Resources*, 819 F.2d 418, 421 (3d Cir. 1987).

Moreover, the Federal Rules of Civil Procedure require only notice pleading, not fact pleading. So to withstand a Rule 12(b)(6) motion, a plaintiff "need only make out a claim upon which relief can be granted. If more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of the civil discovery mechanisms under the Federal Rules." *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004)(quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)("This simplified notice pleading standard relies on liberal discovery rules .... to define facts and issues and to dispose of unmeritorious claims.")).

In *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72 (3[d] Cir. 2002), the Third Circuit identified three separate scenarios to be considered in determining whether entities are sufficiently interrelated to be treated as a single employer for Title VII purposes. The court opined:

> The Court will consider a company and its affiliates a single employer under Title VII in the following instances: (1) when a company has split itself into entities

4

with less than 15 employees intending to evade Title VII's reach, (2) when a parent company has directed the subsidiary's discriminatory act of which the Plaintiff is complaining, or (3) when the entities' affairs are so *interconnected* that they collectively caused the alleged discriminatory practice

*Id.* at 85-86 (emphasis added).  Plaintiff relies on the third scenario.

The third prong requires the court to consider a list of factors to determine if the companies are sufficiently "interconnected" to be considered one employer.  These include: (1) the degree of unity between the entities with respect to ownership, management and business functions, (2) whether they present themselves as a single company such that third parties deal with them as one unit, (3) whether a parent company covers the salaries, expenses or losses of its subsidiary, and (4) whether one entity does business exclusively with the other. *Id.* at 87-88.

Plaintiff has alleged facts with regard to the Corporate Defendants' operations that, if true, may support a reasonable inference that the Corporate Defendants are so "interconnected" they may be considered one employer for Title VII purposes.[3]  The controlling standards of review provide plaintiff with the benefit of the doubt.

A finding that the Corporate Defendants are sufficiently interrelated would undermine NetFx's and SecureNet's 12(b)(6) arguments.  Assuming *arguendo* that all of the Corporate Defendants are to be treated as one employer, NetFx, as one of the Corporate Defendants, would be considered an employer of all employees of the Corporate Defendants.  If combined, the Corporate Defendants would have more than fifteen employees and would have employed

---

[3] Plaintiff points to the websites and affidavits of the Corporate Defendants to establish facts to support a finding that the Corporate Defendants are one employer for Title VII purposes.  These facts include: (1) the same group of individuals controls a majority of the stock of both Open Options and SecureNet, (2) the companies have interlocking directorates, (3) Fisher is an officer of both SecureNet and Open Options, (4) the management and financial team of the companies overlap, (5) the companies maintain the same suite of offices, and (6) the McWethys were the original founders, incorporators and stockholders of NetFx, SecureNet, and Open Options, and remain as directors and stockholders of all three companies.

plaintiff within the statutory limitation period. It follows that NetFx's 12(b)(6) challenge is unavailing at this juncture.

SecureNet's argument that Plaintiff's claims are time-barred similarly would be rendered inapposite. Plaintiff references the "continuing violation" theory. Under this theory, a plaintiff may pursue a claim for discriminatory conduct that began prior to the filing period if she can demonstrate that the act is part of an ongoing unlawful employment practice. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Hostile work environment claims by their very nature allege the existence of an ongoing unlawful employment practice. *Id.* at 115. In such cases where "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by the court for the purposes of determining liability." Id. at 117.

Plaintiff has alleged a series of related acts beginning early in her employment with SecureNet and continuing through her termination from Open Options. Again, assuming the Corporate Defendants are considered one employer and considering that Plaintiff's termination fell within the limitation period, the alleged discriminatory conduct of SecureNet would be included in the ongoing unlawful employment practice.

Plaintiff may be able to prove a set of facts that would defeat NetFx and SecureNet's Rule 12(b)(6) challenges. Accordingly, their requests for relief on these grounds must be denied.

## B. SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over the Title VII action because the claim raises a federal question. 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the defamation and tortious interference claims. 28 U.S.C. § 1367(a).

## C. PERSONAL JURISDICTION

With the exception of Open Options, all Defendants argue that this action should be
dismissed because this Court lacks personal jurisdiction over them and venue is improper in any
event.   All Defendants argue that this action should be transferred to the Northern District of
Texas because venue is either improper or inconvenient.  Because defendants' arguments
concerning venue are dispositive, defendants' arguments based on the lack of personal
jurisdiction need not be resolved.  *Compare Lomano v. Black*, 285 F. Supp.2d 637, 640 (E.D. Pa.
2003) ("Since the Court is transferring this case . . . , it will decline to decide the personal
jurisdiction questions raised by the Defendants.").

## D. VENUE

As previously noted, Plaintiff has brought  a Title VII claim against the Corporate
Defendants and two tort claims against the Individual Defendants, Open Options, and SecureNet.
NetFx and SecureNet contend that venue for any Title VII claim against them is improper in this
District.  Open Options contendes that venue for the Title VII claim against it is inconvenient in
this District and properly should be transferred to the Northern District of Texas.  Open Options,
SecureNet and the Individual Defendants further contend that venue for the state law claims also
is improper in this District.  Defendants thus seek dismissal or an alternative transfer as
appropriate under 28 U.S.C. §§ 1404(a)[4] or 1406(a).[5]

---

[4] Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court
may transfer any civil action to any other district or division where it might have been brought."

[5] Section 1406(a) provides: "the district court of a district in which is filed a case laying venue in the wrong division
or district shall dismiss, or in the interest of justice, transfer such case to any district or division in which it could
have been brought."

7

In response, Plaintiff quotes the following portion of 28 U.S.C. § 1391(c): "a corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction under the Constitutional 'minimum contacts' standard." Plaintiff's Brief in Opp. at 13. By relying on this section to address the issues of venue raised by defendants' motions, plaintiff conflates the separate analysis applicable to jurisdiction and venue and treats them as one in the same. Such an approach is flawed, however, because it fails to acknowledge that venue must be proper for each claim and fails to distinguish between the various venue provisions implicated by plaintiff's claims, including 28 U.S.C. § 1391(a) and 42 U.S.C. § 2000e-5(f)(3).

When reviewing a motion to dismiss for improper venue, a court must accept the plaintiff's well-pled factual allegations regarding venue as true, draw all reasonable inferences from those allegations in the plaintiff's favor, and resolve any factual disputes in the plaintiff's favor. *See Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3rd Cir. 2002); *CQ, Inc. v. TXU Mining Co., L.P.*, 2006 WL 278155 (W.D. Pa., Feb. 3, 2006). In other words, to prevail on a motion to dismiss for improper venue the defendant must present facts that sufficiently defeat the plaintiff's assertion of venue. *Darby v. U.S. Dept. of Energy*, 231 F. Supp.2d 276, 276 (D. D.C. 2002); *2215 Fifth St. Assoc. v. U-Haul, Inc.,* 148 F. Supp.2d 50, 54 (D. D.C. 2001).

Furthermore, "[v]enue must be proper for each claim in a case with multiple claims." *Phila. Musical Soc'y, Local 77 v. Am. Fed'n of Musicians of the United States and Canada*, 812 F. Supp. 509, 517 (E.D. Pa. 1992). Ascertaining that venue is proper as to each claim is especially appropriate where one of the claims asserted has a specific venue provision. *Id.*

## I. Venue for the Defamation and Tortious Interference Claims

Here, proper venue is established for the Title VII claim asserted against Open Options

8

through Title VII's venue provisions.[6]    Open Options concedes that venue is proper because the

Western District of Pennsylvania is the judicial district where Plaintiff would have worked but

for the alleged unlawful employment practice. *Id.* Because there is an issue of fact concerning

whether the Corporate Defendants should be considered one employer for Title VII purposes, the

Court will assume that since venue is proper as to Open Options, it is also proper as to all

Corporate Defendants.

The fact that venue is proper for the Title VII claim does not necessarily mean that venue

is proper for the two tort claims against the Individual Defendants, SecureNet, and Open

Options. Because these are state law claims, venue is controlled by § 1391, which in general

contains separate provisions for actions based solely on diversity jurisdiction and all others.

Because this action is not based solely on diversity, the state law claims are governed by

1391(b).

28 U.S.C. § 1391(b) permits venue to be properly laid in:

(1) a judicial district where any defendant resides, if all defendants reside in the
same State, (2) a judicial district in which a substantial part of the events or
omissions occurred, or a substantial part of property that is the subject of the
action is situated, or (3) a judicial district in which any defendant may be found, *if
there is no district in which the action may otherwise be brought.*"

28 U.S.C. § 1391(a) (emphasis added). Both Individual Defendants reside in Texas. Therefore,

subsection of § 1391(b) is inapplicable. Since jurisdiction and venue would be proper in the

---

[6] The venue provision in Title VII creates four potentially appropriate venues. 42 U.S.C. § 2000e-5(f)(3). A Title
Vii action "may be brought in any judicial district in the State in which the unlawful employment practice is alleged
to have been committed, in the judicial district in which the employment records relevant to such practice are
maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the
alleged unlawful employment practice, but if the respondent is not found within any such district, such an action
may be brought within the judicial district in which the respondent has his principal office."

Northern District of Texas, subsection (3) is inapplicable. Consequently, the only way venue is proper in this District is if a substantial part of the events giving rise to the claims occurred here.

A claims specific inquiry must be undertaken to determine whether a substantial part of the events giving rise to the defamation and tortious interference claims occurred in Pennsylvania. *See Lomano*, 285 F. Supp.2d at 642. The Court of Appeals for the Third Circuit has held that "[t]he test for determining venue [under Section 1391(a)(2)] is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" *Id.* (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). Additionally, events or omissions must have more than some tangential connection with the claim. *Id.* (quoting *DaimlerChryser Corp. v. Askinazi*, No. CIV.A. 99-5581, 2000 WL 822449, at *6 (E.D.Pa. June 26, 2000) (citations and quotations omitted)). Specifically, the events must qualify as substantial for venue to be proper. *Id.* (citing *Pa. Gear Corp. v. Fulton,* No. CIV.A. 98-1538, 1999 WL 80260, at *2 (E.D.Pa. Jan. 26, 1999)(citations omitted)). To determine whether an act or omission giving rise to the claims is substantial, the court must look at the nature of the dispute. *Id.*

Furthermore, "[v]enue will not be proper in a district for a defamation claim if injury is the only event occurring in that district." *Id.* at 642 (quoting *DaimlerChrysler,* 2000 WL 822449, at *6-7). Venue is proper, however, "in a district in which the allegedly defamatory statement was published, particularly if injury was suffered in the same district." *Id.*

10

In the present case, Plaintiff fails to allege any facts indicating that the defamatory statements were published in Pennsylvania.[7]   Instead, she points to two communications:  one between Texas and Illinois, and one between Texas and Virginia. Complaint at ¶ 27.  She alleges that the Individual Defendants made telephone calls to two of her former clients in Illinois and Virginia.  *Id.*  Plaintiff asserts that additional incidents of defamation may turn up during discovery, however, such an assertion is not a "factual allegation."   Because Plaintiff has not alleged any facts indicating that the events giving rise to the defamation claim occurred in this District, none of the subsections of § 1391(b) are met and venue is improper for the defamation claims.

Similarly, venue is improper for the tortious interference claims.   The claims arose from the same facts alleged to support the defamation claim.  None of the alleged events forming the basis of these claims took place in Pennsylvania.  It follows that venue in this District for these claims likewise is improper.

**Transfer of the Defamation and Tortious Interference Claims**

Since venue in this District is improper as to the defamation and tortious interference claims, 28 U.S.C. § 1406(a) becomes applicable. Under Section 1406(a), the Court can either dismiss the claims or transfer them to a district where they could have been brought.  Because jurisdiction and venue would be proper in the Northern District of Texas, transfer of these two claims to that district appears to be warranted.

**Transfer of the Title VII Claim**

---

[7] Plaintiff's sole discussion of venue for the state law claims is contained in one phrase:  ".... because Plaintiff was employed here when she was terminated, venue would be proper under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district."  Plaintiff fails to identify what "events or omissions" beyond her perceived injury took place in Pennsylvania to support this assertion.

As previously noted, Open Options concedes venue is proper within this District as to the Title VII claim against it. It contends, however, that this claim should be transferred pursuant to § 1404(a) for the convenience of the parties and witnesses. Plaintiff opposes the request.

In considering a § 1404(a) motion to transfer, the first step is to determine whether the action "might have been brought" in the transferee forum. The transferor court must determine whether the plaintiff has an unqualified right to commence the action in the transferee district and whether the transferee forum has the power to exercise personal jurisdiction over all defendants. *Camasso v. Dorado Beach Hotel Corp.*, 689 F.Supp. 384, 386 (D.Del. 1988) (citing *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960)). It is undisputed that Texas would have personal jurisdiction over all of the defendants. Venue as to a Title VII claim also could properly be laid in the Northern District of Texas because the majority of the alleged unlawful sexual harassment and retaliation occurred at or originated from the Corporate Defendants' suite of offices in Texas. Thus, the action could have been brought in the Northern District of Texas.

In determining whether a transfer pursuant to § 1404(a) is warranted, there is no precise limit on the number of factors the court may consider. The analysis is flexible and must be guided by the facts and circumstances of the case. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249-50 (1981); *Van Dusen v. Barrack*, 376 U.S. 612, 623 (1964); *Sandvic, Inc. v. Continental Ins. Co.*, 724 F.Supp. 303, 307 (D. N.J. 1998). All relevant factors are to be considered in determining whether, on balance, the litigation would more conveniently proceed and the interests of justice would be better served by the requested transfer to a different forum. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3rd Cir. 1995).

12

The moving party has the burden of justifying the transfer. *American Tel. & Tel. Co. v. MCI Communication Corp.*, 736 F.Supp. 1294, 1306-07 (D. N.J. 1990). "In ruling on 1404(a) motions, courts have not limited their consideration to the three enumerated factors in 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to 'consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Jumara*, 55 F.3d at 879 (quoting 15 Wright, Miller & Cooper s 3847). Several relevant private and public interest factors are to be considered in determining whether an action should be transferred pursuant to 1404(a).

**Private Factors**

The private interest factors include: plaintiff's original choice of forum, the defendant's preference, "whether the claim arose elsewhere," the convenience of the parties and their physical and financial conditions, the convenience of the witnesses, and the location of books and records. *Id* at 879.

First, it is necessary to determine the proper weight to be accorded to the plaintiff's choice of forum. Where the plaintiff has chosen a legally correct forum that is the forum of the plaintiff's residence, there is a strong presumption in favor of the plaintiff's choice which should not be lightly disturbed. *Shutte v. Armco Steel Co.*, 431 F.2d 22, 25 (3rd Cir. 1970), *cert. denied*, 401 U.S. 910 (1971). Nonetheless, where none of the conduct complained of occurred in the plaintiff's chosen forum, plaintiff's choice is entitled to considerably less deference. *See Bartolacci v. Corp. of Presiding Bishop of Church of Jesus Christ of Later-Day Saints*, 476 F.Supp. 381, 383 (E.D. Pa. 1979).

13

Here, Plaintiff resides in this forum and venue is proper as to the Title VII claims. However, she has not identified any alleged wrongful conduct that occurred in this district and her complaint seeks damages from a foreign corporation whose personnel, property, records and operations are located in the Northern District of Texas. Plaintiff's claims are based on occurrences taking place outside of Pennsylvania, primarily in Texas. These circumstances substantially diminish the deference given to Plaintiff's choice of forum.

All five Defendants have unanimously expressed their preference to transfer the action to Texas. This factor thus weighs in favor of transfer.

The claim arose primarily in Texas. Any actual harassment by the Corporate Defendants' employees prior to plaintiff's move to Pittsburgh occurred in Texas. A number of subsequent incidents of harassment identified by plaintiff also occurred in Texas. None of the eleven incidents specifically referenced in plaintiff's complaint occurred in Western Pennsylvania. Thus, the majority of incidents forming the basis for plaintiff's Title VII claim are centered in and connected to Texas.

Proceeding with the case in Texas also will better serve the convenience of the parties. If this case moves forward in Pennsylvania the Corporate Defendants' officers, directors and key personnel would have to travel and defend in a distant forum, whereas if the case is transferred, only Plaintiff will be required to travel. Plaintiff spent the initial two years of her employment with the Corporate Defendants as a resident in Northern Texas and is well familiar with that area.

14

Litigating the case in Texas also will better serve the convenience of the witnesses and provide each party with compulsory subpoena power over such witnesses. Aside from Plaintiff, no other person in Pennsylvania has been identified as relevant to this dispute. The majority of the witnesses involved in the dispute will likely be representatives of the Corporate Defendants, all of whom are located in the Northern District of Texas. Each potential witness would have to travel to testify in this district and, more importantly, would be beyond the subpoena power of this Court. Thus, on balance the convenience of the witnesses weighs in favor of transfer.

Any relevant corporate books and records would be located in Texas as well. While Plaintiff alleges that books and records are located both in Texas and Pennsylvania, the majority of records relating to Plaintiff's employment and termination as well as any formal reports concerning plaintiff's complaints of sexual harassment are undoubtedly located in Texas. Thus, it appears that litigating the matter in the Northern District of Texas will provide the parties with better access to the relevant documents and records. It will also be more convenient and less expensive for the witnesses.

It is clear that most of the private factors weigh in favor of transfer. Litigating the action in Northern Texas will aid in resolving any practical problems that may arise at trial, and will make the trial easier, more expeditious and less expensive.

**Public Interest Factors**

Pertinent public interest factors include: the enforceability of any judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative burdens on the two fora resulting from court congestion; the local interest in

deciding local controversies at home; the public policies of the fora; and the familiarity of the

trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879-880.

While the local interest and court congestion factors appear to be neutral, Texas does

have an interest in monitoring and rectifying the wrongful actions of its corporations and

citizens. In addition, any order involving Plaintiff's claims and any judgement obtained

therefrom would have to be enforced in Northern Texas, not Pennsylvania. Thus, these factors

also tip in favor of transfer, even if only slightly.

Most importantly, however, it would be a disservice to the public and the parties for this

Court to retain part of the case and transfer part. If the Title VII claim proceeds within this

District, the Court will have to sever the two tort claims brought against the Individual

Defendants, SecureNet, and Open Options. The Third Circuit has stated that a court "should not

sever [claims] if the defendant over whom jurisdiction is retained is so involved in the

controversy to be transferred that partial transfer would require the same issues to be litigated in

two places." *Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 33 (3dCir. 1993)(internal

quotations omitted). In this case, many of the issues that will be raised by the two tort claims

will be similar to those raised in the Title VII claim. Specifically, all three claims will focus on

the alleged sexual harassment and retaliatory discharge of Plaintiff. Such an outcome would

defeat the policy of judicial efficiency and lead to administrative difficulties and unneeded court

congestion. Judicial economy thus weighs strongly in favor of transferring the entire case and

controversy to the jurisdiction where it may proceed in toto.

**CONCLUSION**

For the reasons set forth above, the Court will transfer the tort claims pursuant to

16

1406(a) and the Title VII claims pursuant to 1404(a) to the Northern District of Texas.  An

appropriate order will follow.

Date: _July 25, 2006_

David Stewart Cercone
United States District Judge

cc:    Lois E. Glanby, Esquire
       152 East Highland Drive
       McMurray, PA 15317

       Gerri L. Sperling, Esquire
       Metz Lewis LLC
       11 Stanwix Street, 18th Floor
       Pittsburgh, PA 15222

       Karen K. Fitzgerald, Esquire
       Kleiman Lawrence Baskind Fitzgerald LLP
       8750 North Central Expressway
       Suite 777
       Dallas, TX   75231

17